Pearson, J.
 

 “ Movable property ” attends the person, and therefore, is called “personal,” as distinguished from fixed, or real property; and the general principle is that, no matter where it may happen to be, it is subject to the law of the do-micil ; and although it be in a foreign country, it is governed by the same rules and laws of transfer and succession as if the owner had it in possession at home.
 
 Moye
 
 v. May, 8 Ire. Eq. Rep. 134.
 

 The plaintiff and her husband are citizens of this State. They were married here, and have always lived here. As soon, therefore, as the title to the slave in controversy vested in her by the assent of the administrator and delivery by him, although the slave was in Mississippi, the property passed to the husband
 
 ¡jure
 
 mci/riti, according to the laws of this State, and became his in all respects, in the same way as if the wife had possession of the slave
 
 at home.
 
 Being movable property, it attended her person, and in contemplation of law was in her possession at home as much as any property she had about the house, without reference to the manner in which her title
 
 *296
 
 was acquired, or the place where it happened to be. The1 statute of Mississippi was not intended, and does not have the effect, to change in any manner, the nature and quality of slave property. It remains movable, and the State of Mississippi had no concern, in any conceivable manner, with this slave after it ceased to belong t© one of its citizens and became the property of one of the citizens of North Carolina.
 

 From a perusal of the statute upon which the plaintiff rests her claim to a separate estate, it is apparent that there was no intention to extend its operation beyond the State of Mississippi. It is entitled “ An Act for the protection and preservation of the rights and property of married women.” What married women ? Certainty only those who are citizens of that State. We cannot impute to the law-makers an intention to regulate the rights and property of
 
 vm-ried women
 
 in North Carolina, and every other country on the face of the .globe. The several provisions of this- statute, and those of 1846, which is supplemental thereto, show that it was not the intention to give to it an universal operation, but to confine it to their own citizens, leaving us, and the rest of the world, to regulate the rights of our citizens
 
 in ov/a own way.
 

 If, however, we could entertain the supposition that such-was the intention, then, very clearly, there is nothing in the law, or comity of nations, that requires the courts of this State to give effect to the law of another State in derogation of its own laws, and in violation of rights that have vested by force-thereof. It is settled that, in regard to movable- pro]3erty, the rights of the parties are governed by the law of the
 
 matrimonial domicil,
 
 no matter where such property happens to be; or how, or where, it is acquired. Story, in his Conflict of Laws, sec. 158-9, after a full investigation, arrives at this conclusion, both upon the reason of the thing and the weight of authority. Kent, in his Commentaries, 2 vol. 231, concurs in this conclusion, and we take it to be settled.
 

 Mr.
 
 Graham, upon the argument, took this position: Had Mrs. Glass, by will, or deed of gift, given the slave for the sole and separate use of the plaintiff, this Court would have been
 
 *297
 
 bound to give effect to tbe trust so declared, and he asks, is not a statute of a sister state, by which a similar trust is de•clared, entitled to the same respect in this Court? And can we refuse to give effect to a statute where it is conceded that wre would give effect to a will, or deed of gift, having a like purpose in view ?
 

 The analogy wholly fails. Mrs. -Glass was the owner of ■this slave, -and as suck had a right to annex a condition to her gift, so that the donee must take subject thereto. But the State of Mississippi did not own this slave. It was movable property “not fixed and real” as a part of the soil ■of that State, and the State had no further concern with it after it ceased to be the property of one of its citizens. The State of Mississippi-does not profess an intention to annex a •condition to the gift, or transfer of this slave. The operation of the statute was intended to be confined to married women of that State, and has no application to
 
 married women
 
 of our -State, and certainly, if such was the intention, the statute has no effect here, and the rights of the parties are subject to be •regulated by the law ef the matrimonial domicil.
 

 It will be declared to be the opinion Of this Court that the -plaintiff is not entitled to a separate estate in the slave mentioned in the pleadings, and the bill will fee dismissed.
 

 Per CueiaM, Decree accordingly.