Civil action to change, alter and amend administrative features of life insurance trust agreement.
This action was instituted by the trustor, John II. Cutter, and his wife and their son and daughter, against the trustee and the grandchildren of the trustor for the purpose of having the administrative provisions of the trust agreement changed to the end that the trustee be given much broader power in reference to the nature of the investments which could be made of the funds realized from the policies of insurance upon the death, or other maturity or surrender of any policy.
The parties waived jury trial and agreed that the judge presiding find all facts necessary for a determination of the cause, and upon such findings of fact to declare the law thereon and enter judgment in accordance therewith, subject to right of appeal to the Supreme Court.
The court heard evidence, and upon the evidence and from the record in the cause and from the allegations and admissions of the pleading, found substantially the following facts:
"1. That all parties plaintiff are properly before the court, and that all parties defendant have been duly served with summons in this cause as by law provided and are before the court. *Page 688 
"2. That James O. Moore, Esq., of the Mecklenburg County bar, has, by an order entered in this cause, been duly appointed as guardian ad litem for the minor defendants, John Hastings Cutter, 3rd, and Linda Richardson Cutter and Burton Sparling Davis, 3rd, and of any and all children who may hereafter be born unto either George King Cutter or Mary Anne Cutter Davis, and that said guardian ad litem has been duly served with copies of the complaint and summons in this cause and has filed answer on behalf of the said minor defendants now in being or hereafter to be born, admitting the allegations of the complaint and joining in the prayers for relief as set forth in the complaint.
"3. That American Trust Company, trustee, has filed answer in this cause, as appears in the record.
"4. That plaintiff John H. Cutter is 58 years of age; that Grace King Cutter is his wife, and George King Cutter, whose wife is Nancy Bell Cutter, and Mary Anne Cutter Davis, whose husband is Burton Sparling Davis, Jr., are the only children of the said John H. Cutter. That George King Cutter was born 29 September, 1912, and that John Hastings Cutter, 3rd, who was born 26 July, 1935, and Linda Richardson Cutter, who was born 30 June, 1937, are the only children of the said George King Cutter. That Mary Anne Cutter Davis was born 3 December, 1915, and that Burton Sparling Davis, 3rd, who was born on 15 August, 1936, is the only child of the said Mary Anne Cutter Davis.
"5. That American Trust Company is a corporation duly organized under the laws of North Carolina, and is duly authorized and empowered to act as trustee in a fiduciary capacity.
"6. That during the month of November, 1932, plaintiff John H. Cutter executed and delivered to Independence Trust Company, a North Carolina corporation then authorized and empowered to act as trustee in a fiduciary capacity, the life insurance trust agreement."
Simultaneously therewith he deposited with the trustee several policies of insurance upon his life in the total amount of $196,000, which he constituted the subject matter of the trust and referred to as the trust estate. The agreement provided in part:
"The insured hereby grants, bargains, sells, transfers, assigns and sets over the aforesaid trust estate, with any additions thereto that may hereafter be made, to the trustee, subject to the following conditions and limitations:
"1. The trustee shall hold, manage, invest and reinvest the trust estate and shall collect the income. The policies of insurance held by the trustee hereunder shall be payable to the trustee and to that end the insured agrees to execute assignments, changes of beneficiaries and any other instruments which may be necessary.
"2. The trustee is hereby invested with all right, title and interest in and to the policies and authorized to exercise and enjoy all rights *Page 689 
therein and beneficial interests thereunder as fully and effectually as the insured. The insurance companies are hereby authorized and directed to recognize the trustee as fully entitled to all rights and interest under the policies, and any receipts, releases and other instruments duly executed by the trustee, in connection with the said policies, shall be binding and effective. It is distinctly understood that the insured fully realized that he is, by this instrument, giving to the trustee full title to the trust estate, and that he has no right to revoke, change, alter, or modify this agreement in any manner, under any circumstances, it being the intent of the insured to make this instrument irrevocable."
The agreement further provides that "upon the death of the insured, or other maturity or surrender of any policy," the trustee shall collect the proceeds thereof and "hold, manage, invest and reinvest the principal thereof" in bonds of the United States, the State of North Carolina, or any county or city located in North Carolina of sufficient rating to be classed at the time of purchase as legal investments for savings banks of the State of New York. The agreement further provided that the entire net income from the fund thus created shall be paid to the plaintiff, Mrs. Grace King Cutter, wife of said John II. Cutter, so long as she may live, for the use of herself and George King Cutter and Mary Anne Cutter, now Mary Anne Cutter Davis, son and daughter of the insured, trustor. Upon the death of his wife, Grace King Cutter, the funds is to be divided into two equal shares — one share to be held for the sole use and benefit of said Mary Anne Cutter, "so long as she may live," paying to her the entire net income in either monthly or quarterly installments, as may seem advisable. The other share to be held for the sole use and benefit of said George King Cutter and the income paid to him until he shall reach the age of 30 years, when one-third of such share shall be delivered to him. Then from that time the income from the remaining two-thirds shall be paid to said George King Cutter until he reaches the age of 35, when the trustee shall deliver to him "the entire balance remaining in his share of this fund — free from trust."
The agreement further provides that the son and daughter of the trustor, respectively, shall have the right to instruct the trustee by an instrument in writing, or by last will and testament, as to distribution of the corpus
of the share of each. The agreement further provides that, in the event of the failure of either to give instructions, and in the event of his or her death without issue his or her share would go to the other. There is not express provision as to distribution of the remainder after the life estates to the son and daughter of the trustor in the event of the death of one or both of them leaving issue.
The agreement further provides:
"5. Should the insured or the beneficiaries named herein, or any other person, firm or corporation fail to pay premiums on policies herein set *Page 690 
out, the trustee in its sole discretion may pay such premiums, either by executing policy lien notes, or by borrowing sufficient funds for this purpose. Should the trustee elect to borrow or advance funds for the payment of premiums, the trustee shall, out of the first money coming into its hands, from any source constituting a part of this trust estate, repay such loans or advances with interest. It is understood and agreed that the trustee, in accepting this trust, does not agree to pay premiums on life insurance policies covered by this instrument. However, the trustee shall use its best efforts to keep all of the life insurance covered by this instrument in force.
"6. The said trustee has no right to resign this trusteeship. However, should, for any reason, the trustee become incapacitated or unable to continue to serve in the capacity of trustee, then the then clerk of the Superior Court of Mecklenburg County, North Carolina, shall consult and advise with the executive officers of the Independence Trust Company or the persons who were the last executive officers of said company, and after ten (10) days written notice to the beneficiaries of this trust, shall appoint a sound and reliable trust company as trustee to succeed the Independence Trust Company, which trustee shall hold and dispose of the corpus and income therefrom, upon the same terms, conditions, uses and trust, as the original trustee."
"John H. Cutter, the trustor, received no consideration for said trust agreement, but the same was entirely voluntary on his part."
"7. That on or before 10 February, 1934, said Independence Trust Company having become insolvent and having ceased to engage in business and being no longer qualified to act in a fiduciary capacity, the clerk of the Superior Court of Mecklenburg County, North Carolina, in a special proceeding pending in said court, entitled, `In the matter of John H. Cutter Life Insurance Trust — Independence Trust Company, Trustee,' and after due notice and proceedings as provided in said life insurance trust agreement entered an order in said special proceeding nominating and appointing said American Trust Company as trustee under the said life insurance trust agreement in lieu and stead of the said Independence Trust Company, and that said American Trust Company accepted such appointment as trustee and agreed to act, and is now acting as trustee under the said life insurance trust agreement, and that there were delivered to the said American Trust Company, trustee, the life insurance policies then in force and covered by the said trust agreement as listed on the schedule attached to the complaint in this cause, marked Exhibit B, being the only property then belonging to the said trust estate, and that said American Trust Company now holds the said life insurance policies listed on the schedule attached to the complaint, marked Exhibit B, which policies compose the entire assets of the said trust estate, and that other than funds which may be borrowed upon the *Page 691 
said life insurance policies, said American Trust Company, trustee, has in the said trust estate no funds, property or other resources wherewith to pay the premiums upon the said insurance policies as such premiums become due and payable; that such funds as may be borrowed upon the said policies from time to time will not be sufficient wherewith to pay the premiums upon said policies and keep the said policies in force, and that unless the plaintiff John H. Cutter furnishes, or there is received from some other source contributions of cash, from time to time for the purpose of supplementing such funds as may be borrowed upon the said policies so as to enable the trustee to pay the premiums thereon, the said policies will lapse and become of no further force and effect on account of nonpayment of premiums thereon, in which event the whole trust estate will fail.
"8. That from time to time since its appointment as substitute trustee under the said insurance trust agreement, defendant American Trust Company, as trustee under the said trust agreement, has joined with plaintiff John H. Cutter in executing such notes and other paper writings as were necessary to borrow funds upon the said life insurance policies for the purpose of paying the premiums thereon, all of which sums so borrowed have been applied to the payment of premiums upon the said policies upon which such loans were obtained, respectively, and that it was necessary for the preservation of the trust estate that the loans be obtained and the avails thereof so applied. There is attached to this judgment, marked Exhibit No. 1, a list of the loans so obtained by the said trustee in collaboration with the said John H. Cutter, being the loans adverted to by the court in this finding of fact.
"9. That at the time of the execution and delivery of the trust agreement, plaintiff John H. Cutter was in such financial condition as led him reasonably to believe and expect that he would be able to advance and pay the premiums upon the said life insurance policies, and at the same time to service and retire the indebtedness against the portion of his estate not included within the trust agreement. That the said John H. Cutter owns a large number of valuable pieces of real estate in the uptown section of the city of Charlotte, all of which are now subject to outstanding mortgages, and that conditions have now so radically changed since the execution and delivery of the life insurance agreement that the said John H. Cutter finds himself in the position of being unable to carry and pay the premiums upon the life insurance policies now held in said trust and at the same time to make such payments upon the mortgage debts against other property as will, in the event of his death in the natural course of events, leave his estate in such shape that same can be protected for his wife and children, and that the said John H. Cutter is unwilling to continue to pay the premiums upon said policies of life insurance unless the provisions of said life insurance *Page 692 
trust agreement with respect to the powers and rights of the trustee thereunder to invest and reinvest such funds as may be held in such trust shall be so changed, altered and amended as to permit the trustee under the said life insurance trust agreement to use and invest the funds belonging to same after the death of the said John H. Cutter in such way and manner as in the opinion of the trustee may be reasonably necessary and advisable to produce an income adequate to protect and preserve the remaining estate of the said John H. Cutter. That the plaintiffs, other than John H. Cutter, and the defendants, other than American Trust Company, are the natural objects of the bounty of the said John H. Cutter, and in the event of his death will be vitally interested in the preservation of his estate and are also vitally interested in the preservation of said life insurance trust estate.
"10. That the plaintiffs have requested that the said life insurance trust agreement be changed and amended as set forth in paragraph numbered 11 of the complaint filed in this cause, and that the personal defendants, through their regularly appointed guardian ad litem, have joined in the request for the alteration and amendment of the said life insurance trust agreement as set forth in paragraph numbered 11 of the complaint.
"11. That the said John H. Cutter has heretofore executed a will and placed it in the custody of American Trust Company, and that the beneficiaries under said will, if it becomes effective, will be the same as the beneficiaries under said life insurance trust agreement, and that they will also be the beneficiaries of the estate of John H. Cutter in case he dies intestate.
"12. That it is necessary to change, alter and amend the said life insurance trust agreement in the respects set forth in paragraph 11 of the complaint in order to properly preserve the said trust and at the same time in order to properly preserve and protect the interests of the beneficiaries thereunder in the estate of the said John H. Cutter, in which they, as the natural objects of his county, are and will be deeply interested."
"Upon the foregoing findings of fact, the court does hereby, as a matter of law, order, adjudge and decree as follows:
"(a) That the appointment by the clerk of the Superior Court of Mecklenburg County of American Trust Company as trustee under the aforesaid insurance trust agreement in lieu and stead of Independence Trust Company, the original trustee therein, be and the same hereby is in all respects fully ratified, approved and confirmed.
"(b) That the actions of said American Trust Company, trustee, in joining with the said John H. Cutter in obtaining loans upon various of the policies held in the said life insurance trust and applying the avails of such loans toward the payment of the premiums upon such policies, *Page 693 
all as set forth on the statement hereto attached, marked Exhibit No. 1, be and they hereby are in all respects fully ratified, approved and confirmed.
"(c) That said American Trust Company, as trustee under said life insurance trust agreement, be and it hereby is fully authorized and empowered, from time to time, to borrow or cause to be borrowed upon the life insurance policies held in the said trust such sums as in the opinion of the said trustee may be necessary and desirable to use towards the payment of the premiums upon such policies and to apply any and all funds so borrowed towards the payment of premiums upon such policies as such premiums may become due and payable, with full power and authority in the trustee, and in its discretion, to borrow upon any one or more of said policies for the purpose of paying premiums not only upon the policy or policies so borrowed upon, but also for the purpose of paying premiums upon any others of the said policies.
"(d) That all of the beneficiaries of said life insurance trust agreement who are now in being and are sui juris having consented to and requested the amendment of said life insurance trust agreement as set forth in paragraph numbered 11 of the complaint, and the minor defendants who are now in being and who are not in being, but who might, by some possibility, be interested in said trust, having through their duly appointed guardianad litem requested the amendment and modification of said trust agreement as hereinbefore referred to, and the court having found, and now finding, that it is for the best interests of all present and future beneficiaries under said life insurance trust agreement and necessary for the preservation of said trust that the said life insurance trust agreement be so amended and changed; thereupon the court holds that, in its chancery jurisdiction, in order to preserve said life insurance trust and to prevent the entire failure of same, the court has the power to approve and to make binding upon any parties who may possibly be interested in said trust the modification of said life insurance trust agreement set forth in paragraph 11 of the complaint, and that, under the circumstances and the foregoing facts, said power should be exercised in this case.
"(e) The court is of the opinion that this is such a voluntary trust as under C. S., 996, may be revoked or modified by the trustor with the consent of all the beneficiaries having a vested interest, and that the plaintiffs are all the persons having a vested interest, but is of the opinion that it is not necessary to so hold because in any event the court is of the opinion that it has power, in the exercise of its equitable jurisdiction over trusts, to modify the powers of the trustee under the trust instrument as prayed for in the complaint and that the power should be exercised in this case. *Page 694 
"It is therefore ordered, adjudged and decreed that the said life insurance trust agreement executed and delivered by John H. Cutter, which bears date of 19 September, 1932, and a copy of which is attached to the complaint in this cause, marked Exhibit A, be and the same hereby is changed, amended, modified and altered by striking out therefrom the paragraph numbered 3, including subparagraphs (a), (b), (c) and (d) thereof, reading as follows (these relate to investing funds as hereinbefore stated; hence, recital thereof is omitted), and inserting therein in lieu of the sections so stricken out the following provisions, to wit:
"3. Upon the death of the insured, or other maturity or surrender of any policy, the trustee shall proceed to collect and receive the proceeds of the said policies, and the trustee shall be vested with and exercise the following powers and duties with respect to the trust estate, to wit:
"(a) To manage, hold, handle, control, improve, pledge, mortgage, lease without limit, or sell and convey any of the said trust property, whether received as principal or income, in such manner, at such prices, and upon such terms as it may deem best; and shall likewise have full power and authority to invest and from time to time reinvest any funds received or held by it, in such real estate, personal property, stocks, bonds, mortgages or other securities as the trustee, in its discretion, may deem advisable, it being the intention of the grantor to relieve the trustee from all restrictions placed by law upon investments and reinvestments made by trustees, and to confer upon the trustee such full and discretionary powers of investment and reinvestment as the trustee would possess if it were itself the individual owner of the trust estate.
"(b) To participate in any reorganization, consolidation or merger of any corporation the stocks, bonds or other securities of which may be at any time held in trust, and to receive and to continue to hold upon the trusts hereby created, any stocks, bonds or other securities which may be allotted to the trustee by reason of its participation in any such reorganization, consolidation or merger.
"(c) To make divisions and distributions in kind or in cash, or partly in kind and partly in cash, and the determination of the trustee as to the fairness and equality of any such distribution shall be conclusive upon all persons entitled to receive any share of the trust estate.
"(d) To compromise, settle or arbitrate any claim or demand in favor of or against the trust estate.
"(e) To purchase real estate, stocks, mortgages, bonds and other securities and property from any estate at such prices as it may determine. In like manner to loan to the executor or other representative of any estate, such sums, and upon such securities as may seem to the trustee, wise in its uncontrolled discretion.
"(f) To exercise conversion or subscription rights appurtenant to any stocks, bonds or other securities at any time held in trust, and to use *Page 695 
such portion of the principal of the trust estate as may be necessary therefor, or in the discretion of the trustee to sell any such rights.
"(g) All stock dividends and all realized appreciation in the value of stocks, bonds or other securities, resulting from sale or other disposition thereof, shall be considered principal and not income.
"(h) The trustee shall not be required to set up any sinking or other fund to amortize or absorb the premium at which any property may have been purchased or may be held by the trustees.
"(i) The trustee shall not be liable for loss or depreciation in value of any of the trust property or for any investments or reinvestments which it may make, or may continue to hold, unless it shall have failed to act with reasonable care; nor shall the trustee be under any obligation to make payments or premiums, dues, assessments or other charges which may become payable on or in respect to any life insurance policies held in trust, or any life insurance policies heretofore or hereafter deposited with it, nor shall it be liable for loss resulting from the failure to make any such payments.
"(j) The trustee shall not be responsible for inability to enforce collection of the proceeds of any life insurance policy held in trust, nor shall it be under any responsibility to bring suit to collect the proceeds of any insurance policy held in trust, unless it shall have been indemnified to its full satisfaction.
"(k) Any payment from the principal of the trust estate by a beneficiary and/or beneficiaries shall be deemed a termination of this trust to the extent of the amount so paid."
One of the minor defendants, to wit, Burton Sparling Davis, 3rd, is a nonresident, and substitute service was obtained upon him by the sheriff of Ulster County, New York.
From the above judgment the defendant American Trust Company, trustee, appealed to the Supreme Court, and assigns error.
The appellant presents these questions: (1) Is the defendant Burton Sparling Davis, 3rd, nonresident infant, through substituted service of summons, properly before the court? (2) Is the appointment of American Trust Company as substitute trustee valid? (3) Is the order authorizing the trustee to continue to borrow money upon the policies of insurance held under the trust agreement valid? (4) Did the court have authority to modify the provisions of the trust agreement as set out in the judgment? The answer to each is "Yes."
1. Where the person on whom service of summons is to be made "is a nonresident, but has property in this State, and the court has jurisdiction *Page 696 
of the subject of the action, "where the subject of the action is real or personal property in this State, and the defendant has, or claims, or the relief demanded consists wholly or partly in excluding him from any actual or contingent lien or interest therein," notice of summons may be published. C. S., 484 (3), (4). When the place of residence is known and the same is made to appear by affidavit, substitute personal service may be made. C. S., 491. Such service was personally made on Burton Sparling Davis, 3rd. Guardian ad litem has been duly appointed for him and has answered. If it be conceded that the said minor has a contingent interest in the subject matter of the trust, is the present proceeding in rem?
As evidence of debt or damages recoverable thereon, the policies of insurance are choses in action. 32 C. J., 1093. A chose in action is personal property. 50 C. J., 763. The situs of personal property is at the domicile of the owner. McLean v. Hardin, 56 N.C. 294; Trust Co. v.Doughton, 187 N.C. 263, 121 S.E. 741; McGehee v. McGehee, 189 N.C. 558,127 S.E. 684. By the trust agreement here, the insurance policies are made the subject matter of the trust. The court has jurisdiction of the trustee, the holder of the legal title to the policies. They are in its possession. The proceeding relates to the administration of the trust. Consequently, the suit is a proceeding in rem, Ferguson v. Price,206 N.C. 37, 173 S.E. 1, in which summons may be served by publication of notice, or by substituted service.
2. The appointment of the American Trust Company as substitute trustee is in strict compliance with the provisions of section six of the trust agreement, in which the procedure is prescribed by the creator of the trust. A special proceeding is not required. The approval of the court was unnecessary. The appointment is good without it. Nevertheless, the approval gives judicial sanction.
3. Under section five of the trust agreement the original trustee is authorized to borrow money on the policies of insurance held under the agreement for the purpose of raising funds with which to pay premiums thereon. Section six provides that a trustee, appointed as therein provided to succeed the trustee named, "shall hold and dispose of the corpus and income therefrom, upon the same terms, conditions, uses and trust as the original trustee." Under this provision the American Trust Company, having been duly and regularly appointed substitute trustee, is vested with the powers of the original trustee.
4. We are of opinion that the action of the court in modifying the administrative provisions of the trust agreement is proper in the exercise of its equitable jurisdiction. "The regulation and enforcement of trusts is one of the original and inherent powers of a court of equity." 21 C. J., 116. "A court of equity has the power to do whatever is necessary to be done to preserve the trust from destruction, and in the exercise *Page 697 
of this power it may, under certain unusual circumstances, modify the terms of the trust to preserve it but not to defeat or destroy it. The courts are slow to exercise their power even to modify the terms of a trust, and will only do so when it clearly appears to be necessary. . . . So in a case where the income of the trust property is insufficient to pay the taxes, and the body of the estate is in danger of being lost entirely, the court will order the sale of all or a part of it in order to preserve it as far as possible." 26 R. C. L., 1283; 80 A.L.R., 117. This power is recognized in this State. In the case of Trust Co. v. Nicholson, 162 N.C. 257,78 S.E. 152, Allen, J., said: "There is high authority for the position that conditions like those before us annexed to estates, limiting the powers of trustees or cestui que trust, if valid, do not prevent the court of equity from ordering a sale of property contrary to such condition. . . ." Then he quotes from Custis v. Brown, 29 Ill. 230: "Exigencies often arise not contemplated by the party creating the trust, and, which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency."
In Bogert on Trusts and Trustees, 1796, it is said: "The directions of the settlor as to methods of management are of secondary importance. The primary consideration is the end which he had in mind, the benefits and advantages which he desired to confer upon the beneficiaries named. In any case where there is real necessity for a revision in methods and machinery for accomplishing settlor's fundamental purposes, equity has power to alter the terms of management in order that it may perform its vital function of bringing to the cestuis the results to which they are entitled by the terms of the investment."
In the case in hand the court makes full findings of fact showing the changed conditions and the necessity for modifying the administrative features of the trust agreement in order that the corpus of the trust be preserved for the beneficiaries. On these findings the equitable jurisdiction of the court is properly exercised. All parties, who could possibly be affected are either in, or are represented in, court.
We deem it unnecessary to discuss the right to modify under the authority of C. S., 996, as the court below did not base its decision thereon.
The judgment below is
Affirmed. *Page 698