W. E. SHUFORD v. BLUE RIDGE BUILDING AND LOAN ASSOCIATION
AND B. E. GREENE, RECEIVER.

(Filed 15 June, 1936.)

1. **Appeal and Error F b—**

   In an action tried by the court by agreement, an exception to the judgment presents the single question of whether the findings of fact are sufficient to support the judgment.

2. **Building and Loan Associations D a—Borrowing stockholder held not entitled to preference for amount paid on stock after limitation of association's operations by Insurance Commissioner.**

   Defendant building and loan association was ordered by the Insurance Commissioner to cease making loans and paying out its funds and selling capital stock after the Commissioner had found, upon investigation, that its capital stock was impaired. Two years and three months thereafter a receiver was appointed to liquidate its affairs. Petitioner seeks to have payments on capital stock, made by him during the two years and three months after the association's operations were restricted, declared a preference against its assets. *Held:* The Commissioner did not find upon his audit that the association was insolvent, but only that its capital stock was impaired, and it does not appear that, at that time, there was no prospect of the association's resuming former operations, and the corporate existence of the association was not terminated and its assets placed in liquidation until the date the receiver was appointed, and petitioner is not entitled to the preference claimed by him.

APPEAL by petitioner, J. M. Westall, from *McElroy, J.,* at April Term, 1936, of BUNCOMBE. Affirmed.

In the above entitled action, after the appointment of a receiver, J. M. Westall filed a petition asking to have the payments made by him subsequent to 30 September, 1933, on his subscriptions to stock in the defendant Building and Loan Association, which had been pledged as security for a loan to him by the association, declared a preferential claim, which petition the receiver denied.

Counsel waived trial by jury, and the court, by consent, found the facts and entered judgment denying the petitioner the right to a preferential claim, to which the petitioner excepted and appealed to the Supreme Court.

*Sale, Pennell & Pennell for petitioner, appellant.*
*Johnston & Horner for defendants, appellee.*

Schenck, J.   There is but one assignment of error and that is to "the signing of the judgment," and this presents the single question as to whether the facts found are sufficient to support the judgment. *Wilson v. Charlotte,* 206 N. C., 856. The facts found are contained in the third paragraph of the judgment, which is as follows:

"That on or about 16 July, 1931, J. M. Westall became a subscriber for 59 shares of Series 75-B stock of the Blue Ridge Building and Loan Association, and that on said date he borrowed from said association the sum of $11,800.00, securing same by deed of trust on improved real estate within the city of Asheville and pledged the stock as additional collateral for said loan; that since 17 July, 1931, the said J. M. Westall made payments on said stock subscription totaling $3,466.25, of which sum $1,740.50 was paid prior to 30 September, 1933, and $1,725.75 was paid after 30 September, 1933, and prior to 26 December, 1935; that prior to 30 September, 1933, the sum of $89.68 was allocated to the stock subscribed for by J. M. Westall as earnings or profits of the association; that on 30 September, 1933, it became apparent by an audit conducted by the Commissioner of Insurance for the State of North Carolina that there was an impairment in the value of the stocks of the Blue Ridge Building and Loan Association to the extent of sixteen per cent, and the Blue Ridge Building and Loan Association was thereupon directed by the Commissioner of Insurance to cease making loans or paying out funds on stock by reason of the said impairment, and was further directed to make no further sales of its capital stock; that thereafter, and on 26 December, 1935, an order was made appointing E. L. Ray, trustee, of the Blue Ridge Building and Loan Association, for the purpose of liquidating, and that upon the resignation of the said E. L. Ray, as trustee, B. E. Greene was duly appointed receiver, and is now the duly qualified and acting receiver of the Blue Ridge Building and Loan Association; that said Blue Ridge Building and Loan Association has no creditors in excess of two hundred ($200.00) dollars, other than subscribers to its stock."

The decision of this case turns upon the determination of the status of the Blue Ridge Building and Loan Association after 30 September, 1933, and prior to 26 December, 1935, the date the first receiver was

appointed. The payments involved were made between 30 September, 1933, and 26 December, 1935. If the corporate defendant ceased to do business on 30 September, 1933, then it would appear that the position of the petitioner is well taken but, on the other hand, if the corporate defendant did not cease to do business until 26 December, 1935, then the position of the petitioner is untenable.

The determinative facts are "that on 30 September, 1933, it became apparent by an audit conducted by the Commissioner of Insurance for the State of North Carolina that there was an impairment in the value of the stock of the Blue Ridge Building and Loan Association to the extent of sixteen per cent, and the Blue Ridge Building and Loan Association was thereupon directed by the Commissioner of Insurance to cease making loans or paying out funds on stock by reason of said impairment, and was further directed to make no further sales of its capital stock." It will be noted that the court does not find that the Commissioner of Insurance found that the Blue Ridge Building and Loan Association was insolvent on 30 September, 1933, but only finds that it became apparent at that time that there was an impairment of the stock, and that the court does not find that the Commissioner of Insurance at that time did anything to take over the business of the association by the appointment of a receiver or otherwise, but only limited its business by directing that it cease making loans and paying out funds and selling capital stock, thereby conserving assets and avoiding new liabilities. While the Blue Ridge Building and Loan Association, from 30 September, 1933, to 26 December, 1935, was limited in its operation, still it remained in business as a building and loan association under its charter and in its own name. This the petitioner recognized by continuing to make his regular monthly payments on his subscriptions to stock up until 26 December, 1935. While the limitation placed upon the operation of the association by the Commissioner of Insurance may have given to the petitioner, or to any other corporator, the right to have had the association judicially declared insolvent and a receiver appointed, thereby terminating the existence of the association and bringing about a liquidation of its assets, in the absence of any action instituted for this purpose there was no termination of the association's corporate existence.

The corporate existence of the Blue Ridge Building and Loan Association ceased on 26 December, 1935, the date the receiver was appointed. Such was the holding in *Strauss v. Building and Loan Association,* 117 N. C., 308, relied upon in appellant's brief. In that case it is said: "On 24 July the first receiver was appointed, and the corporation ceased at that time, Endlich, *supra,* 528," and again, "The appointment of the receivers of this insolvent corporation caused the debts and mortgages due the concern to mature, and they may be collected at once. Endlich, *supra,* sec. 523."

In Endlich on Building and Loan Associations (2d Ed.), par. 527, it is said: ". . . Where a building association has become incompetent to perform its obligations to its shareholders, by reason of insolvency, and its affairs have actually been placed in the hands of receivers, with no remaining prospect that the building association will ever resume its former operations," a shareholder "is not liable to be charged for periodical dues and fines, accruing subsequently to the receiver's appointment, as if the association were continuing in business and would be able to discharge its obligations toward him during its probable duration." In other words, the obligations of a subscriber for stock under his contract with a building and loan association cease when the association's "affairs have actually been placed in the hands of receivers, with no remaining prospect that the building association will ever resume its former operations." In the case at bar, the affairs of the association had not been actually placed in the hands of a receiver on 30 September, 1933, nor does it appear that at that time there was no remaining prospect of the association's resuming former operations.

Holding as we do that the Blue Ridge Building and Loan Association did not cease to exist until the appointment of the receiver on 26 December, 1935, any payments made by the petitioner on his subscriptions to stock prior to that date were made by him as a corporator to the association, and therefore "must first be credited in discharge of his pro rata share of the losses of the concern just as, in a contrary event, he would have been credited with his share of the profits, and after payment of such losses the mortgaged property as well as himself is liable for the assessments necessary to mature his stock." *B. and L. Association v. Blalock,* 160 N. C., 490. Such was the result of the judgment entered in the Superior Court.

Affirmed.