R. C. REDWINE; CLARA CLODFELTER; BESSIE WALTON; CHARLES R. REDWINE, INDIVIDUALLY AND AS EXECUTOR AND TRUSTEE; DAVID T. REDWINE, INDIVIDUALLY AND AS EXECUTOR AND TRUSTEE; H. O. CLODFELTER, INDIVIDUALLY AND AS EXECUTOR AND TRUSTEE; CASSIE REDWINE; HAZEL H. REDWINE; ALDA REDWINE; R. E. WALTON; HATTIE REDWINE; HENRIETTA CLODFELTER; CATHERINE CLODFELTER; SARAH ZACHARY; MARTHA REDWINE; WILLIAM ZACHARY; MILDRED DINWIDDIE; J. D. REDWINE, JR.; EDGAR L. DINWIDDIE AND CATHERINE REDWINE v. ROBERT F. CLODFELTER; DAVID CLODFELTER; PATRICIA ANN WALTON; BETTY WALTON; JERRY WALTON; MOLLIE WALTON; THE UNBORN ISSUE OF CHARLES R. REDWINE; THE UNBORN ISSUE OF DAVID T. REDWINE; THE UNBORN ISSUE OF CLARA CLODFELTER; AND THE UNBORN ISSUE OF BESSIE WALTON.

(Filed 22 May, 1946.)

**1. Appeal and Error § 40a—**

An exception to the signing of the judgment presents the single question whether the court correctly applied the law to the facts found.

**2. Executors and Administrators § 24—**

Family agreements for the settlement of *bona fide* disputes and controversies in regard to estates, not involving the rights of infants, when approved by the court, are valid and binding, and when fairly made, are favorites of the law.

**3. Same—**

Where there is a testamentary trust and the rights of infants are affected: (1) A family agreement will not be allowed to amend, defeat, or revoke the trust, but will be approved only to preserve the trust; (2) The rule that the law looks with favor on family agreements does not prevail, but the maxim applies that equity looks with a jealous eye on contracts materially affecting the rights of infants and that their welfare is the guiding star in determining its reasonableness; (3) The trust will not be modified on technical objections, but there must be some exigency, contingency, or emergency which makes action of the court indispensable to the preservation of the trust and the protection of the infants.

**4. Same—Approval of family agreement held without error upon facts found in this case.**

The findings of fact by the court disclosed the following situation: The will in question set up a trust with provision for the payment of income to designated beneficiaries and the division of the *corpus* to the children of the named beneficiaries upon the death of their parent. Some of the beneficiaries were preparing to file in good faith a caveat to litigate *bona fide* disputes. The result of such litigation would be uncertain and such litigation would be long, costly and would tend to disrupt and divide the family. The adult beneficiaries reached an agreement for the distribution of the estate, which agreement provided for setting aside a sum in trust, income of which to accumulate and become a part of the principal, for the

benefit of the ultimate takers, in an amount estimated to net them approximately as much as they would receive under the original trust. Infants *in esse* and *in posse* were made parties and duly represented by guardians *ad litem*. *Held:* The trial court had discretionary power to approve the family settlement and its judgment approving and directing the execution of the agreement is affirmed.

APPEAL by defendants from *Olive, Special Judge,* at April Term, 1946, of DAVIDSON.

Petition for approval of a family settlement of a controversy respecting an estate devised in trust and for instructions.

On 28 September, 1945, J. D. Redwine died leaving a last will and testament in which he devised the bulk of his estate, of the net value of approximately $115,000, in trust. He directed his trustees to pay (1) One-sixth of the income of the trust estate to the two children of a deceased son until their 45th birthday when they were to receive the principal. Each was to draw $3,000 on his 35th birthday and a like amount on his 40th birthday; (2) One-sixth of said income to his son, R. G. Redwine for life, with provision for maintaining a minimum monthly payment; at his death one-sixth of the principal was to be distributed among his named grandchildren; and (3) The balance of the income to each of four other children, one-fourth (one-sixth of the total) to each during his or her life. Upon the death of any one of said children one-sixth of the principal estate was to be paid over to the children of such child.

Certain of the children became dissatisfied. In respect thereto the court made the following finding, to wit:

"That one of the heirs, R. G. Redwine, has threatened and intended to file a caveat to the will of J. D. Redwine; that the said R. G. Redwine has employed some, and retained other, attorneys to represent him in said proceeding; that said attorneys have actually prepared the necessary papers to begin said proceeding; that some 44 substantial and highly regarded citizens of Davidson County have signed a paper indicating that they would give testimony favorable to the caveator; that the Executors have employed attorneys and have made arrangements to employ other attorneys in the event said caveat is filed; and that some of the other heirs, devisees and legatees have indicated that when said caveat is filed that they would become caveators. The Court finds as facts that the disputes involved in the threatened litigation are *bona fide* disputes, the parties thereto making adverse contentions in good faith; that the determination of the rights of the parties by litigation would be long, expensive and wasteful; that the result of a trial in the Superior Court would be uncertain; that the losing parties would doubtless appeal

to the Supreme Court; that further trials might be necessary before reaching a conclusion of the litigation; and that said will is ambiguous and would be difficult to administer without frequently resorting to the courts for judicial interpretation and construction, thereby creating additional expense against the estate." (Finding of Fact No. IX.)

"That if said caveat proceeding were begun, it would act as a constant barrier to the establishment of family peace; that the trial of said case would doubtless attract wide attention and publicity and would tend to expose to the public gaze intimate family affairs which should be guarded within the family circle; that such a trial would further disrupt and tend to destroy the peace, honor and dignity of the family, resulting in the embarrassment and humiliation of the members thereof; and that such a trial would plunge the family into litigation which would doubtless extend for a long period of time and be attended with an enormous amount of expense, uncertainty and risk, thereby either defeating or seriously jeopardizing said trust." (Finding of Fact No. X.)

When it became apparent that long and costly litigation over the validity of the will was imminent, members of the family sought an amicable and friendly adjustment of the family differences and a settlement of the estate acceptable to all. The conferences which followed resulted in a family agreement executed by all the adult children and grandchildren, parties in interest, both those who are immediate beneficiaries under the trust and ultimate takers.

The trust agreement provides that $40,000 shall be set apart and invested by the trustees for the use and benefit of the five sets of grandchildren named in the will, to be paid one-fifth to each set upon the death of their parent, child of testator. The income is to accumulate and become part of the principal estate. The balance is to be divided as provided in the agreement. It is estimated that the principal and income of this trust, when subject to disbursement, will net the ultimate takers approximately as much as they would receive under the original trust.

Thereupon the executors, joined by all the adult parties in interest, instituted this action to obtain the approval of the proposed family settlement. All the issue, of the children of testator, *in esse* and *in posse,* are made parties defendant and are duly represented by guardians *ad litem.*

At the hearing the court below, after finding the material facts, concluded:

"That under the circumstances now existing, the Court finds that the settlement herein proposed is for the best interest of all the parties, including all the present, prospective and contingent beneficiaries; that

such settlement would prevent dissipation and waste and would more nearly accomplish the primary objectives and effectuate the real intentions of the creator of said trust than could be hoped for by a rejection of said settlement and a relegation of the parties to a bitter family strife and long drawn out litigation; that the trust created by the testator should be modified according to the exigencies of the situation; and that if the creator of said trust had anticipated such exigencies that he would approve said modification."

It thereupon entered its decree approving the proposed settlement, adjudging that it is binding upon all parties in interest, including all infants both *in esse* and *in posse,* and directing the executors to make settlement of the estate in accord therewith. The guardians *ad litem* excepted and appealed.

*Clifford Frazier, Paul G. Stoner, Don A. Walser, and Charles W. Mauze for plaintiffs, appellees.*

*McCrary & DeLapp for P. V. Critcher, guardian ad litem for infant defendants in esse.*

*J. Lee Wilson for Turner S. Wall, Jr., guardian ad litem for infant defendants in posse.*

BARNHILL, J.    The only exception in the record is to the signing of the judgment. This exception presents the single question whether the facts found by the court are sufficient to support the judgment, or, stated differently, whether the court correctly applied the law to the facts found. *Rader v. Coach Co.,* 225 N. C., 537; *Fox v. Mills, Inc.,* 225 N. C., 580; *Lee v. Board of Adjustment, ante,* 107; *King v. Rudd, ante,* 156; *Shuford v. Building & Loan Asso.,* 210 N. C., 237, 186 S. E., 352.

"Family agreements looking to the advantageous settlement of estates or to the adjustment of family differences, disputes or controversies, when approved by the court, are valid and binding. They are bottomed on a sound public policy which seeks to preserve estates and to promote and encourage family accord. *Spencer v. McCleneghan,* 202 N. C., 662, 163 S. E., 753; *In re Estate of Wright,* 204 N. C., 465, 168 S. E., 664; *Reynolds v. Reynolds,* 208 N. C., 578, 182 S. E., 341; *Bohannon v. Trotman,* 214 N. C., 706, 200 S. E., 852; Schouler, Wills, Executors and Administrators (6d), sec. 3103." *Fish v. Hanson,* 223 N. C., 143, 25 S. E. (2d), 461; *Bailey v. McLain,* 215 N. C., 150, 1 S. E. (2d), 372. When fairly made they are favorites of the law. *Tise v. Hicks,* 191 N. C., 609, 132 S. E., 560; *Bohannon v. Trotman, supra; In re Will of McLelland,* 207 N. C., 375, 177 S. E., 19.

When, however, the settlement relates to a testamentary trust and the rights of infants are affected the following basic legal considerations are controlling:

(1) The will creating the trust is not to be treated as an instrument to be amended or revoked at the will of devisees or to be sustained *sub modo* only after something has been sweated out of it for the heirs at law. *Bailey v. McLain, supra.* The power of the court is exercised not to defeat or destroy the trust but to preserve it. *Cutter v. Trust Co.,* 213 N. C., 686, 197 S. E., 542; *Penick v. Bank,* 218 N. C., 686, 12 S. E. (2d), 253; *Duffy v. Duffy,* 221 N. C., 521, 20 S. E. (2d), 835.

(2) The rule that the law looks with favor upon family agreements does not prevail when the rights of infants are involved. A court of equity looks with a jealous eye on a contract that materially affects the rights of infants. Their welfare is the guiding star in determining its reasonableness and validity. *In re Reynolds,* 206 N. C., 276, 173 S. E., 789.

(3) A court of equity will not modify or permit the modification of a trust on technical objections, merely because its terms are objectionable to interested parties or their welfare will be served thereby. It must be made to appear that some exigency, contingency, or emergency has arisen which makes the action of the court indispensable to the preservation of the trust and the protection of infants. *Reynolds v. Reynolds, supra; Cutter v. Trust Co., supra;* 65 C. J., 683, sec. 549.

Weighing the facts found in the light of these considerations we are of the opinion that they are fully sufficient to sustain the decision of the court below.

There was an impending caveat, based on substantial evidence, which would disrupt the family and, in all probability, involve long, costly, and asset-consuming litigation. This created an exigency not contemplated by the testator which seriously affected the welfare of the infants and threatened to impair materially, if not to destroy, their inheritance. The interested parties reached an agreement, the terms of which satisfied the demands of the dissident children and at the same time preserved the trust to the extent that the infant parties will finally realize benefits substantially equal to those accruing under the original devise.

The trial judge, exercising the judicial discretion of a chancellor in the supervision of trusts and estates of infants, approved the settlement and directed its execution. The discretion was his. No cause for disturbing his decree is made to appear. Hence the judgment is

Affirmed.